**MIDLAND AMERICAN SALES— WEINTRAUB, INC., Plaintiff,**

v.

**OSRAM SYLVANIA, INC., Defendant.**

No. 1:93–CV–1518.

United States District Court, N.D. Ohio, Eastern Division.

Jan. 11, 1995.

Gary B. Kabat, Kabat, Mielziner & Sobel, Jonathon F. Sobel, Highland Heights, OH, for plaintiff.

John B. Lewis, Shelly A. Goering, Frank R. Osborne, Arter & Hadden, Cleveland, OH, for defendant.

### *MEMORANDUM & ORDER*

O'MALLEY, District Judge.

Defendant, Osram Sylvania, Inc. ("Osram") has filed a Motion for Summary Judgment or in the Alternative for a Stay of Proceedings. Plaintiff, Midland American Sales—Weintraub, Inc. ("Midland") opposes both requests. For the reasons set forth, Osram's Motion for Summary Judgment is **GRANTED,** rendering its alternative Motion for a Stay of Proceedings moot.

#### *Pertinent Facts*

The facts in this case are fairly straightforward and, on the record presented, undisputed. Midland, a company based in Cleveland,

Ohio, is a sales agent which represents manufacturers in the sale of their products in return for commissions on those sales. Osram, based in Massachusetts, is a manufacturer who was represented by plaintiff under a Broker Agreement dated June 1, 1993. Fred Cohen was an employee of Midland from October 29, 1990, through and until January 22, 1993. Mr. Cohen sold Osram products on Midland's behalf in Michigan prior to his departure from Midland in 1993.

On January 29, 1993, Osram notified Midland that the Broker Agreement would be terminated effective March 1, 1993. On March 1, 1993, Osram entered into a Broker Agreement with One Eleven Group, Inc. of Farmington Hills, Michigan, a sales agency representing certain manufacturers represented by Midland, including Osram. As of March 1, 1993, Fred Cohen was affiliated with One Eleven Group, Inc. and since then has been actively engaged in promoting the sale of Osram products.

Midland does not contend that Osram was not entitled to terminate the June 1990 Broker Agreement as and when it did. Midland also does not contend that, upon terminating its agreement with Midland, Osram was not entitled to enter into a new broker agreement with a different sales agency for the commission-based sale of its products.

Midland's complaint with Osram's conduct rests solely on the fact that Osram was aware at the time it entered into the broker agreement with One Eleven Group, Inc. that Fred Cohen had executed an employment agreement with Midland which, by its terms, purported to restrict Mr. Cohen's right to do business with manufacturers represented by Midland during the term of Mr. Cohen's employment with that agency. Midland contends, and Osram does not dispute, that Osram had been told by Midland both of the existence of Mr. Cohen's employment agreement and of Midland's contention that the restrictive covenant in that agreement was and is valid and enforceable against Mr. Cohen.

Midland nowhere contends that Osram actively induced Mr. Cohen to leave Midland's employ or gave Mr. Cohen some improper financial or other incentive to convince him to breach his employment agreement with Midland. Despite ample opportunity to present evidence to support its claims, Midland rests its allegations *solely* on (1) Osram's knowledge of the existence of Mr. Cohen's employment agreement and (2) Osram's subsequent contract with One Eleven Group for its services. (See Complaint at ¶s 9–11 and Affidavit of Daniel Gregg at ¶s 2–3).

### *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure dictates that, where summary judgment is sought,

> The judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

While all evidence must be viewed in the light most favorable to the non-moving party, summary judgment is appropriate whenever that non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478.

In this context, moreover, "the trial Court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street* at 1479–80, citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C.Cir.1988). The trial court need not seek out factual disputes nor speculate on the possibility that, under some yet unstated scenario, a meaningful factual dispute might somehow arise. The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *See Fulson v. City of Columbus,* 801 F.Supp. 1, 4 (S.D.Ohio 1992). Further, the non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the

non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

Here, the undisputed facts demonstrate that Osram is entitled to summary judgment. Midland has failed to point to any specific factual issues precluding this determination. Under the standards applicable to summary judgment, Midland's conclusory assertion that the issue of whether Osram was privileged in its contact with One Eleven Group, Inc. "calls for factual determinations", falls short of the mark.

### Osram is Entitled to Summary Judgment in Its Favor

■ In its Complaint, Midland rests its cause of action on its claim that Osram committed the tort of intentional interference with contract by agreeing to do business with Cohen or an entity affiliated with him. Osram has moved for summary judgment on the ground that its decision to contract with One Eleven Group does not, as a matter of law, constitute interference with the Midland/Cohen employment agreement. Osram is correct.

■ Under Ohio law intentional interference with contract can be established only where it is proven that one, without privilege to do so, causes a third-party not to enter into or to breach an existing contract with another. *Juhasz v. Quik Shops, Inc.*, 55 Ohio App.2d 51, 57, 9 O.O.3d 216, 379 N.E.2d 235 (1977). A plaintiff must establish that a putative defendant had knowledge of the existing or agreed-to-relationship between plaintiff and a third party, acted upon that knowledge to cause a breach with the third party and that that action was "improper", i.e., that defendant was not privileged to act in the manner it did. *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127–28 (6th Cir.1992).

■ Under Ohio law, mere knowledge of the plaintiff's contract with the third-party and a decision to contract with the third-party in the face of that knowledge is insufficient to establish the tort of business interference. *See Horth v. American Aggregates Corporation*, (1940) 31 Ohio Law Abs. 331, 338, 20 O.O. 76, 35 N.E.2d 592 ("One does

not induce another to commit a breach of contract with a third person … when he merely enters into an agreement with the other with the knowledge that the other cannot perform both it and his contract with the third person."); *Kand Medical*, 963 F.2d at 128; *Heheman v. E.W. Scripps Co.*, 661 F.2d 1115, 1127 (6th Cir.1981), *reh'g den.* 668 F.2d 878, *cert. den.* 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982).

While plaintiff appears to concede the existence of this principle and to acknowledge that any interference with its contract with Mr. Cohen must be improper and non-privileged to give rise to a cause of action under Ohio law, plaintiff seeks to avoid summary judgment by contending that whether or not one is privileged to act depends upon certain "factual determinations" which, in plaintiff's view "render summary judgment inappropriate." (Opposition Br. at 5).

Specifically, plaintiff refers the Court to Section 767 of the Restatement of the Law, Torts (1939), which outlines a number of factors to be considered in determining whether an actor's conduct in interfering with another's contract is improper. (Opposition Br. at 4). These factors include: the nature of the actor's conduct, the interests of the party with whom the actor has interfered, the interests sought to be advanced by the actor, the social interests of protecting the freedom of contracting and the interference, and the relationship between the parties. Section 767 of the Restatement of the Law, 2d, Torts (1979), is also the law in Ohio, where the actor's motive is added as a factor for consideration. *Heheman*, 661 F.2d at 1127. Plaintiff apparently claims that the existence of these factors as part of the inquiry in business interference cases prohibits this Court from ever ruling on the issue of privilege or impropriety as a matter of law.

■ What plaintiff fails to recognize, however is that, while a resolution of each of the factors outlined in the Restatement may require some factual inquiry, the ultimate question of whether an interference is improper and can, thus, support a claim for intentional interference is a question of law. *See, Kand Medical*, 963 F.2d at 128–29; *Heheman*, 661 F.2d at 1127. Thus, where, as here, all of

the facts relevant to the "factors" set forth in the Restatement are *undisputed,* the Court is free to conclude that a privilege does or does not exist as a matter of law.

This case was removed to this Court in July, 1993. The parties were given until March 11, 1994 to complete discovery. Briefing on the dispositive motion was completed on June 20, 1994. Despite ample opportunity to establish facts in support of its claim, plaintiff still relies *solely* on the following:

(1) Osram was a customer of plaintiff serviced by Mr. Cohen when Mr. Cohen was in plaintiff's employ;

(2) When Mr. Cohen left plaintiff's employ Osram ceased doing business with plaintiff;

(3) Osram thereafter chose to do business with One Eleven Group, with which Mr. Cohen is now affiliated; and

(4) At the time Osram did business with One Eleven Group, it was aware that Mr. Cohen had executed an employment agreement with Midland that contained a restrictive covenant.

Also undisputed on the record is Osram's contention, supported by affidavits and documentary evidence, that Osram made the decision to terminate its agreement with plaintiff because plaintiff's Cleveland personnel had no prior involvement or familiarity with Osram's business in Michigan. (Affidavit of Gary Raines at ¶ 5).

Applying the Restatement factors to the undisputed facts, we know precisely the nature of Osram's conduct, its motive, the interests it sought to advance in its deals with Midland and Mr. Cohen, the relationship between all the parties and the competing interests at issue. None of the facts in this case warrant or even weigh in favor of a conclusion that Osram's conduct was improper.

This Court is of the view that a licensed broker can not, as a matter of law, maintain an action against its former customer *solely* because that customer chose to shift its business to the broker's former employee with knowledge that the former employee had executed an employment agreement containing a restrictive covenant. Without more,

any "interference" with the employment agreement (to the extent it can be called interference) is not improper and defendants cannot be said to have acted in the absence of privilege to do so.

On the record of this case, plaintiffs claim of tortious interference with contract is unsupportable and defendant is entitled to judgment as a matter of law.

Defendant's Motion for Summary Judgment [Docket # 16] is **GRANTED.**

**IT IS SO ORDERED.**